UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONG-NGOC T. DAO,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No. 14-cv-04749-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND DENYING PLAINTIFF'S MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 9, 13, 21 |

Defendant's motion to set aside the default and plaintiff's motion to strike are scheduled for a hearing on February 6, 2015. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to set aside the default, DENIES plaintiff's motion to strike, and ORDERS Liberty to file its answer with the Court within three (3) days of this Order.

**BACKGROUND**

On October 26, 2014, plaintiff Hong-Ngoc T. Dao filed this lawsuit against defendant Liberty Life Assurance Company of Boston ("Liberty"). Plaintiff has a contract with Liberty for supplemental disability insurance. Compl. ¶ 13. The complaint alleges, among other things, that Liberty breached this contract by failing to conduct a thorough and fair review of plaintiff's medical condition following plaintiff's claim for long-term disability benefits, and by wrongfully refusing to pay the requested benefits. *Id.* ¶¶ 24-51, 72.

On October 1, 2014, plaintiff served a settlement demand and draft complaint on defendant. Decl. of Joseph Charles in Opp. to Def's Mot. ¶ 3 ("Charles Decl."). Liberty retained

its current counsel within the month. Decl. of Stacy Tucker in Supp. of Def's Mot. ¶ 4 ("Tucker Decl."). On October 26, 2014, plaintiff filed her complaint with the Court. The complaint was mailed on November 3, 2014, and delivered to defendant's corporate offices four days later. Charles Decl. ¶ 10. Because service was made by mail pursuant Rules 4(h) and 4(e)(1) of the Federal Rules of Civil Procedure, defendant was required to answer the complaint by December 4, 2014.

Though defendant received the complaint on November 7, 2014, it was routed to various Liberty offices over the next two weeks before being sent to CSC, defendant's agent for service of process. *See* Tucker Decl. Exs. A, B. When defendant's counsel finally received the complaint on December 1, 2014, it bore a cover sheet from CSC stating that the complaint had been served on CSC on November 24, 2014. *Id.* ¶¶ 4-5, Exs. A, B. Defendant's counsel states "I have represented Liberty Life in many other cases and have represented other clients whose registered agent for service is CSC Corporation. Based on my experience, all complaints that CSC processes as a registered agent include this cover page and I routinely review and rely on the accuracy of the information on these cover sheets as to the date and type of service. I have never seen a CSC cover sheet with inaccurate information until this action." *Id.* ¶ 6. Defense counsel states that she did not carefully review the attached summons and complaint to confirm the CSC cover sheet information was accurate because she had recently reviewed the draft copy of the complaint. *Id.* Instead, she incorrectly assumed that the answer would be due on December 15, twenty-one days after the date listed on the CSC cover sheet. *See id.*

Plaintiff filed a motion for entry of default on December 5, 2014. Dkt. No. 7. The same day, defendant's counsel learned of plaintiff's motion through an Electronic Case Filing (ECF) notification. Tucker Decl. ¶ 7.[1] It is undisputed that on December 5, 2014, defense counsel called plaintiff's counsel, Joseph Charles, and left him a voice message stating that she was confused by plaintiff's motion for entry of default because defendant understood that its answer was due on

---

[1] Defendant's counsel states, "As my firm had been retained to represent Liberty Life in this matter, once we knew of service, our calendaring clerk set up an electronic notification even though Liberty Life had not yet appeared." *Id.*

December 15, 2014, based on a November 24, 2014 service date. *Id*. ¶ 9; Charles Decl. ¶ 14. The Clerk entered default on December 8, 2014. Dkt. 8. Counsel spoke on the phone on December 8, 2014, and during that phone call plaintiff's counsel refused to grant defendant an extension of time to file an answer. Charles Decl. ¶ 18. On December 9, 2014, defense counsel left Mr. Charles another voice message asking whether plaintiff's counsel was aware of the Northern District's recently adopted Guidelines for Professional Conduct, and asking whether counsel would stipulate to reopening the case to avoid the need for defendant to file a motion to set aside the default. *Id*. ¶ 22. Plaintiff's counsel states that he returned the phone call the next day and left a message stating the following:

> I explained that Plaintiff could not agree to release Defendant from its default because Plaintiff had yet to hear any compelling explanation of excusable neglect offered by Defendant. I explained to Ms. Tucker that, yes, we had read the Guidelines of Professional Conduct several times and were confident that Plaintiff had complied with the Guidelines in all respects. Finally, I explained that Guideline 15, in our opinion, related to the seeking of a default "judgment or other substantive order" and not to a request for entry of default and as such, Guideline 15 did not "require" Plaintiff to contact Defendant prior to seeking entry of default. I further informed Ms. Tucker that, in compliance with Guideline 15- Default- Plaintiff was giving Defendant an opportunity to cure its default before filing for a default judgment or seeking a substantive order by allowing Defendant time to file a motion to have the default set aside.

*Id*. ¶ 23.[2] Defendant filed a motion to set aside the default on December 12, 2014. Dkt. No. 12.

---

[2] Guideline 15 of the Northern District's Guidelines for Professional Conduct, titled "Default," states, "A lawyer should not seek an opposing party's default to obtain a judgment or substantive order without giving that opposing party sufficient advance written warning to allow the opposing party to cure the default."

As an initial matter, the Court notes that the entry of default by the Clerk is a step prior to seeking a default judgment, and thus it is not obvious that Guideline 15 does not apply to seeking the entry of default as opposed to only the entry of a default judgment. In any event, the preamble to the Guidelines states that all counsel have the duties of "civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, cooperation and competence"; that "[t]hese Guidelines are structured to provide a general guiding principle in each area addressed followed by specific examples *which are not intended to be all-encompassing*"; and "[e]very attorney who enters an appearance in this matter shall be deemed to have pledged to adhere to the Guidelines. Counsel are encouraged to comply *with both the spirit and letter* of these Guidelines." Further, Guideline 4 states that counsel should cooperate regarding granting extensions of time, and Guidelines 10 states that counsel should cooperate to avoid unnecessary motion practice.

It is the Court's view that the instant motion practice (which included plaintiff's 25 page opposition, voluminous declarations and exhibits, and two separate motions to strike by plaintiff accompanied by additional declarations and exhibits) was completely unnecessary and should

3

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of default upon a showing of "good cause." Fed. R. Civ. P. 55(c). To determine good cause, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* However, even if one of the factors goes against the defendant, the Court may still exercise its discretion and grant the motion. *See Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1112 (9th Cir. 2011) ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not."). In considering a motion to set aside default, a court should bear in mind that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). A district court's determination of whether to set aside the entry of default pursuant to Rule 55(c) is reviewed for abuse of discretion. *Mesle*, 615 F.3d at 1091.

Here, all three factors weigh in favor of setting aside the default. "'[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original), *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather . . . the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*,

---

have been avoided by a joint stipulation of the parties. The Court directs plaintiff's counsel to review the Guidelines of Professional Conduct an additional time and to adhere to both the spirit and the letter of those Guidelines in all further practice in this case and the Northern District.

4

615 F.3d at 1092 (quoting *TCI Grp.*, 244 F.3d at 697). Defendant states that its failure to file an answer was the result of a minor oversight: a misplaced reliance on the deadline provided by its agent for service of process. Tucker Decl. ¶¶ 6, 8. While the mistake could perhaps have been avoided by a more thorough examination of the summons and complaint, the oversight was not clearly made in bad faith. Accordingly, this factor weighs in favor of setting aside the default.

In addition, Liberty has provided the Court with specific facts that would constitute a meritorious defense. The Ninth Circuit has explained that the "meritorious defense" requirement "is not extraordinarily heavy." *TCI Grp.*, 244 F.3d at 700. "All that is necessary to satisfy [the] requirement is to allege sufficient facts that, if true, would constitute a defense." *Id.* The veracity of the factual allegations is determined by litigation on the merits, not by the court in deciding a motion to set aside a default. *Id.* In this case, Liberty asserts that the denial of plaintiff's insurance claim was the result of plaintiff's failure to provide Liberty with required documentation, rather than a breach of its duties under the insurance contract. *See* Tucker Decl. ¶ 3. These facts, if true, constitute a defense to plaintiff's claims.

Plaintiff disputes, at length, the sufficiency of Liberty's defense. Pl.'s Opp. at 15-21. The Court finds that plaintiff's arguments raise factual questions that cannot be resolved at this stage of the litigation. *See Mesle*, 615 F.3d at 1094. Plaintiff also objects that defendant relies on inadmissible hearsay evidence in support of its defense. However, these objections are without merit because admissible evidence is not required at this stage to support meritorious defenses. *See Results ByIQ, LLC v. NetCapital.com, LLC*, No. C 11-0550 SC., 2012 WL 2838594, at *4 (N.D. Cal. July 10, 2012).[3]

As to the final factor, there is no evidence that plaintiff would be prejudiced by setting aside the default. To be prejudicial, the setting aside of a default must result in greater harm than simply delaying resolution of the case, or forcing the plaintiff to litigate on the merits. *TCI Grp.*, 244 F.3d at 701. The appropriate standard is whether the plaintiff's ability to pursue her claim will be hindered. *Id.* (quoting *Falk*, 739 F.2d at 463). Plaintiff claims prejudice on two grounds: first,

---

[3] Accordingly, the Court DENIES plaintiff's motion to strike. Dkt. No. 13.

that setting aside the default will result in delayed payments to plaintiff;[4] second, that the "cumulative effect of time, money and stress resulting from litigating this matter further is unwarranted." Pl.'s Opp. at 21-22. But this is precisely the delay and litigation that precedent explicitly excludes from the definition of prejudice. *See TCI Grp.*, 244 F.3d at 701.[5] Because there is no other evidence of prejudice, this factor weighs in favor of setting aside the default. Accordingly, the Court GRANTS defendant Liberty's motion. Dkt. No. 9.

As an alternative to complete denial of defendant's motion, plaintiff requests that this Court "deny the motion as to the uncontested claims for relief (claims 2 through 7) and/or order that Liberty has waived all of its affirmative defenses" because it did not raise the defenses in a responsive pleading. Pl.'s Opp. at 1. Assuming the Court has such discretion, the Court nevertheless finds that "neither the purpose of Rule 55(c) nor the interests of justice would be served by denying Defendant's motion and entering default judgment" as to those claims. *See FOC Financial Ltd. P'ship v. Nat'l City Commercial Capital Corp.*, 612 F. Supp. 2d 1080, 1084 (D. Ariz. 2009) (granting defendant's motion to set aside default where defendant provided a defense to one of plaintiff's claims but not others). Further, granting defendant's motion only on the condition that defendant waives its affirmative defenses—no matter how meritorious those defenses may be—directly undermines the policy in favor of resolution on the merits. *See Falk*, 739 F.2d at 463. Accordingly, the Court declines to retain the default as to the second through seventh claims, or deprive defendant of its affirmative defenses.[6]

---

[4] Although plaintiff alleges that defendant owes her payments, defendant states that it has already overturned the denial of plaintiff's claim, and has made retroactive payments up to the date on which the claim was initially denied. Whether payments to plaintiff are delayed is a factual question not appropriate for resolution at this stage.

[5] Plaintiff mistakenly relies on *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.2d 922 (9th Cir. 2004), as authority for her contention that delayed payments constitute prejudice. In that case, the finding of prejudice was based on the risk that a delay would allow defendants to "move and hide assets" to shield them from judgment. *See id.* at 926. Thus, the issue was not whether payments would be delayed, but whether payments would be made at all.

[6] Plaintiff has filed an "Objection to, and Motion to Strike, Reply Evidence and New Argument." Dkt. No. 21. Plaintiff objects to the introduction of new evidence and argument in defendant's reply brief. *Id.* at 1-3. Because the Court reaches its conclusions without relying on the new evidence or argument contained in defendant's reply brief, the Court DENIES defendant's motion to strike as moot. Dkt. No. 21.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant Liberty's motion to set aside the entry of default, Dkt. No. 9, DENIES plaintiff's motions to strike, Dkt. Nos. 13, 21, and ORDERS Liberty to file its answer within three (3) days of the issuance of this Order.

**IT IS SO ORDERED**.

Dated:  February 3, 2015

_____
SUSAN ILLSTON
United States District Judge