UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONG-NGOC T. DAO,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No. 14-cv-04749-SI<br><br>**ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT; MOTION FOR DETERMINATION OF VALIDITY OF POLICY PROVISIONS; AND MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 170, 182, 185 |

On July 1, 2016, the Court held a hearing on the parties' cross-motions for partial summary judgment and plaintiff's motion for a determination of the validity of policy provisions and motion to compel. For the reasons set forth below, the Court GRANTS in part and DENIES in part defendant's motion for partial summary judgment, DENIES plaintiff's motion for partial summary judgment, and DENIES plaintiff's motion for a determination of the validity of policy provisions and motion to compel.

## BACKGROUND

### I.   Plaintiff's claim for benefits

On October 26, 2014, plaintiff Hong-Ngoc T. Dao filed this lawsuit against defendant Liberty Life Assurance Company of Boston ("Liberty"). Plaintiff has a contract with Liberty for supplemental disability insurance. The second amended complaint alleges, among other things, that Liberty breached this contract by improperly and unreasonably denying plaintiff's claim for long-term disability benefits, and by wrongfully refusing to pay the requested benefits.

Liberty issued a Group Disability Income Policy of the University of California, Policy

No. GD3-860-037972-03/GF3-860-037972-01 ("the Policy"), which provides group disability insurance benefits to eligible employees of the University of California("UC") through its Short Term Disability Insurance Plan and Supplemental Disability Insurance Plan. Dkt. No. 185-6, Ex. 1. The Policy provides up to 12 months of short term disability ("STD") benefits, followed by long term disability coverage ("LTD") under the Supplemental Disability Insurance Plan. For STD coverage, the "Covered Person" must be totally disabled from performing his or her "own occupation." *Id*. For LTD coverage, the "Covered Person" must be totally disabled from performing "any occupation." *Id.* at P00011.

Plaintiff was first enrolled in the Supplemental Disability Insurance Plan in 2005, when she began work at the University of California at UCSF. Dkt. No. 185-6, Ex. 2 (Dao depo. at 119-46.[1] Plaintiff had a one year break in service in approximately 2008, after which she accepted a job at UC Berkeley in 2009, and then she moved to her most recent position as a Research Policy Manager at the University of California Office of the President (UCOP) in November 2011.

According to the declaration of Corie Gillham, Short Term Disability Case Manager II for Liberty, in July 2013 plaintiff reported experiencing increased migraines and stress and stopped working. Gillham Decl. ¶ 4. Plaintiff submitted a claim for STD benefits on September 30, 2013, and provided the names and contact information for two treating physicians, Dr. Heublein (primary care) and Dr. Kitt (neurologist). *Id*. Liberty claims it requested information from both doctors and that it received some but not all of the requested information from Dr. Heublein and did not receive any information from Dr. Kitt. Plaintiff claims that the evidence shows that Liberty never requested any information from Dr. Kitt until July 2014. Liberty states that based on the information provided by Dr. Heublein, Liberty initially approved plaintiff's STD claim on October 8, 2013, and issued payments commencing August 5, 2013.

During the fall of 2013, Dr. Heublein extended plaintiff's return to work several times, and

---

[1] The parties agree that the UC insurance plans are exempt from the provisions of the Employee Retirement Income Security Act (ERISA). *Silvera v. The Mutual Life Ins. Co.,*884 F.2d 423, 427 (9th Cir. 1989) (where a governmental entity purchases a benefit plan on behalf of government employees and delegates the administration to a private insurer, the plan is a government plan exempt from ERISA)

in early 2014, Dr. Heublein released plaintiff to return to work 20 hours a week as of February 10, 2014. Plaintiff worked part time from February to April 2014, working mostly from home, and was therefore eligible for partial disability benefits.

On January 29, 2014, Liberty sent plaintiff a letter stating that her STD benefits would end on August 5, 2014, and that Liberty would begin to evaluate an LTD claim while also continuing to process her STD claim. Between January and July of 2014, Liberty requested that plaintiff and her physicians provide information in support of her claims for benefits. Liberty asserts that plaintiff and her physicians failed to provide the requested information, and in a letter dated August 5, 2014, Liberty denied plaintiff's claim for LTD benefits.

The parties dispute whether Liberty acted reasonably with regard to its investigation of plaintiff's claims for STD and LTD benefits. Plaintiff contends that Liberty failed to conduct a proper investigation and instead "papered the file" to support a denial of LTD benefits. Plaintiff alleges, *inter alia*, that Liberty's claim file notes do not support various assertions made by Liberty about efforts that it made to contact plaintiff and her physicians, that Liberty backdated a request for medical information, that Liberty repeatedly requested information that was irrelevant to its LTD evaluation, and that Liberty put plaintiff under five days of covert surveillance in order to find some reason to deny her claim.[2] Plaintiff also claims that her physicians provided sufficient evidence of her disability prior to Liberty's denial of her LTD claim in August 2014. Plaintiff's primary care physician, Dr. Heublein, stated in July 2014 that plaintiff suffered from chronic migraine headaches with nausea, vertigo and photophobia, and that her symptoms made it difficult for her to perform activities of daily living. Another physician, Dr. James, stated in July 2014 that plaintiff had been diagnosed with Major Depressive Disorder, Post Traumatic Stress Disorder, and Chronic Migraines with aura.

According to Liberty, plaintiff repeatedly failed to respond to letters, phone calls, and requests for information, plaintiff never completed the STD claim forms, and she only returned

---

[2] Liberty hired an investigator to conduct surveillance of plaintiff's home from April 1-5, 2014. The investigator did not see plaintiff during this time. According to plaintiff, Liberty also conducted online surveillance of plaintiff's internet presence, and plaintiff states that the investigator did not find any activity inconsistent with plaintiff's symptoms.

some of the LTD claim forms for the first time in July 2014. Liberty denies that it backdated any letters and states that the date on the letters at issue was a typographical error. Liberty also asserts that it conducted surveillance on plaintiff based on her failure to respond to requests for information, and that Liberty contacted all of plaintiff's physicians as soon as plaintiff informed Liberty about her treatment from these physicians and provided contact information for the physicians. Liberty also claims that despite repeatedly requesting current medical information from plaintiff's medical providers, the physicians either did not respond or provided information that was either incomplete or not recent.

Plaintiff's attorney sent a letter dated October 1, 2014, to Liberty. Dkt. No. 185-5, Ex. 1. Plaintiff characterizes this letter as a pre-litigation settlement demand, while Liberty characterizes this letter as an appeal of the denial of LTD benefits. The letter stated, *inter alia*, that plaintiff had authorized her counsel to settle all claims she has against Liberty for $6,000,000, and set forth the facts in support of plaintiff's claim for LTD benefits. Liberty Technical Claims Team Manager Trisha Brewster has submitted a declaration stating "Because Plaintiff was challenging the denial and claimed continued disability, and Liberty Life had now received some records and information on her psychological treatment from Dr. James and Plaintiff's neurologist had contacted Liberty Life agreeing to provide the records requested, I interpreted the letter as an appeal and made the decision to reopen the claim and approve benefits at that time." Dkt. No. 185-5 ¶ 6.

On October 14, 2014, Ms. Brewster wrote to plaintiff's counsel and informed him that Liberty was re-opening plaintiff's claim to conduct additional investigation, and advised that LTD benefits were being reinstated retroactive to August 5, 2014 with the understanding that additional records would be provided. *Id.*, Ex. 2. Liberty issued a check to plaintiff on October 14, 2014 for $8,411.68 for the period from August 5, 2014 to October 4, 2014.

Plaintiff filed this lawsuit on October 26, 2014.

From October 29, 2014 through March 30, 2015, Liberty issued plaintiff monthly checks for $4,205.84.

On November 28, 2014, the Social Security Administration awarded plaintiff Social Security disability benefits. Dkt. No. 185-1, Ex. 2. The award letter stated that plaintiff was

4

1  found to be disabled under Social Security's rules on July 5, 2013, and that plaintiff would receive
2  a retroactive award of $22,264.00 for the period from January 2014 through December 2014, and
3  that she would then receive monthly benefits. *Id.* Plaintiff's initial Social Security benefit amount
4  was $2,024.30 per month. *Id.*

5  In March 2015, Liberty learned that plaintiff had received an award of Social Security
6  disability benefits. On March 30, 2015, Liberty sent a letter to plaintiff's attorney stating that
7  pursuant to terms of the Policy regarding "Benefits from Other Income," Liberty "will begin
8  reducing [plaintiff's] disability benefit from Liberty to offset for her Social Security benefits and
9  we will calculate the overpayment due." *Id.* Ex. 3. That letter also cited the Policy's provision
10 regarding "Right of Recovery," and stated "We ask that you set aside any retroactive payment
11 received to repay this obligation. Once we have calculated the amount due, we will notify you."
12 *Id.*

13 On April 9, 2015, Liberty sent plaintiff's counsel another letter stating that based upon
14 plaintiff's Social Security award, "we have reduced [plaintiff's] LTD monthly benefit from
15 $4205.84 to $3864.17, to reflect her Social Security award." *Id.* Ex. 4. The letter also stated
16 Liberty had calculated the amount of the overpayment that plaintiff was required to repay Liberty
17 as $15,964.93. *Id.* Between April 2015 and July 2015, plaintiff received the lowered LTD
18 monthly benefit of $3,864.17.

19 In another letter dated July 27, 2015, Liberty informed plaintiff that Liberty had not
20 received repayment of the overpayment, and that "If we do not receive repayment for the
21 overpayment due by August 10, 2015, we will begin reducing [plaintiff's] Supplemental Disability
22 benefits to recover the overpayment." *Id.* Ex. 5. In a letter dated August 18, 2015, Liberty
23 informed plaintiff's attorney that "Liberty Life will withhold [plaintiff's] monthly disability benefit
24 payment in the amount of $3864.17 beginning with the next payment scheduled to release on
25 August 29, 2015. . . . Please note that, although the scheduled repayments will absorb [plaintiff's]
26 entire benefit payment for a period of time, once she has fully repaid Liberty Life, she will again
27 receive disability payments, provided she continue[s] to be eligible under her contract." *Id.* Ex. 6.
28 From August 2015 through December 2015, Liberty ceased paying plaintiff LTD benefits in order

to recover the alleged overpayment. In January 2016, Liberty resumed making monthly LTD payments of $3,864.17 to plaintiff, and plaintiff continues to receive monthly LTD benefits from Liberty.

## II. The Policy

The Policy includes in the SCHEDULE OF BENEFITS an explanation of how benefits are calculated, which includes the deduction of Benefits from Other Income and instruction to see SECTION 4 for a discussion of Benefits from Other Income. Dkt. No. 185-6, Ex. 1, P0006, P0007. SECTION 4- DISABILITY INCOME BENEFITS states how benefits are obtained and calculated, including the offset of Other Income Benefits. *Id*., P00015-26. This offset is discussed for short term disability at P00015-20, and for long term disability at P00021-26. Under SHORT TERM/SUPPLEMENTAL DISABILITY COVERAGE, the Policy explains how to obtain and calculate benefits:

**Disability Benefit**

When Liberty receives proof that a Covered Person is Totally Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Weekly Benefit after the end of the Waiting Period. The benefit will be paid for the period of Total Disability if the Covered Person gives to Liberty proof of continued:

    1. Total Disability; and

    2. regular attendance of a Physician,

The proof must be given upon Liberty's request and at the Covered Person's expense.

For the purpose of determining Total Disability, the Injury must occur and the Covered Person's Total Disability must begin while the Employee is insured for this coverage; and Total Disability which is the result of the Covered Person's Sickness must begin while the Employee is insured for this coverage. In addition, a loss of a license for any reason does not, in itself, constitute Total Disability.

The Weekly Benefit will not:

    1. exceed the Covered Person's Amount of Insurance; or

    2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Total Disability Weekly Benefit**

To figure the amount of Monthly Benefit:

    1. Multiply the Covered Person's Eligible Earnings by the Benefit Percentage shown in the Schedule of Benefits.

    2. Take the lesser of:

        a. the amount figured in step (1) above; or

        b. 70% of the Covered Person's Eligible Earnings less the Benefits from Other Income, (shown in the Benefits from Other Income provision of this coverage); or

        c. the Maximum Monthly Benefit shown in the Schedule of Benefits.

The Total Disability Benefit payable will never be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.

**Benefits From Other Income (Applicable to Class 1-Short Term Disability):**

Benefits from Other Income means those benefits shown below and in Section 1 - Schedule entitled "Lump Sum Benefits":

    1. any Disability and/or Retirement benefits for which the Covered Person is eligible under Social Security; . . . .

On Page P00018, the Policy also includes a section titled **Benefits from Other Income (Applicable to Class 2-Supplemental Disability)**. The Policy also states that **Benefits from Other Income** includes "1. any Disability and/or Retirement benefits for which the Covered Person is eligible under Social Security."

Under the section titled LONG TERM SUPPLEMENTAL DISABILITY COVERAGE, the subsections are also bolded and titled **Total Disability Benefit** and **Amount of Total Disability Weekly Benefit**. *Id*. P00021-24. Those sections contain language almost identical to the SHORT TERM/SUPPLEMENTAL DISABILITY COVERAGE section, referring to Monthly Benefit rather than Weekly Benefit. LONG TERM SUPPLEMENTAL DISABILITY COVERAGE also includes a bolded sub-heading titled **Benefits from Other Income**. That section defines **Benefits From Other Income** as:

    5. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act for which:

        a. The Covered Person is eligible for; and

7

> b. The Covered Person's spouse [or minor children] receive or are eligible for because of the Covered Person's eligibility for Retirement Benefits . . . .

Under Section 7, GENERAL PROVISIONS (*Id.* P00031-34), the Policy also states:

> **Right of Recovery**
>
> If benefit overpayment on any claim occurs, it will be required that reimbursement be made to Liberty within 60 days of such overpayment, or Liberty has the right to reduce future benefit payments until such reimbursement is received. Liberty has the right to recover such overpayments from the Covered Person or the Covered Person's estate.

Also under Section 7, the Policy states:

> **Interpretation of Policy**
>
> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding the construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Finally, the Policy states:

> **Conformity with State Statutes**
>
> Any provision of this policy which, on its Effective Date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

Plaintiff moves for summary judgment on her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory fraud, declaratory relief, and unfair competition. Defendant moves for summary judgment on plaintiff's claims for promissory fraud, fraud, negligent misrepresentation, declaratory relief and unfair competition. Defendant also moves for summary judgment on plaintiff's requests for punitive or treble damages.

The Court finds that there are numerous disputes of fact regarding defendant's handling of plaintiff's claim such that summary judgment is inappropriate on all claims except plaintiff's claims for declaratory relief. The parties hotly dispute, *inter alia*, whether Liberty "sanitized" the claims file and/or "papered" the file to support a denial, whether plaintiff and her physicians had provided sufficient evidence of disability under the Policy at the time Liberty denied plaintiff's LTD claim, and whether Liberty's handling of plaintiff's claim was reasonable or in bad faith or fraudulent. The Court also finds there are disputes of fact regarding plaintiff's damages, and whether defendant acted with malice, oppression and fraud. Accordingly, the Court DENIES the parties' cross-motions for partial summary judgment on plaintiff's claims for breach of contract,

breach of the implied covenant of good faith and fair dealing, promissory fraud, fraud, negligent misrepresentation, unfair competition, and plaintiff's request for punitive or treble damages.[3]

Plaintiff's sixth cause of action for declaratory relief seeks a declaration that the Policy provisions related to the Social Security offset and recoupment, and the "discretionary clause," are illegal and unenforceable. Both parties have moved for summary judgment on this claim. In addition, plaintiff's motion for determination of validity of policy provisions seeks a ruling as to the validity of these same provisions. Plaintiff seeks discovery related to these provisions, and to reopen discovery to conduct discovery on whether Liberty "sanitized" plaintiff's claim file.

## I.  Declaratory relief -- Social Security offset

Plaintiff seeks declaratory relief declaring that the Policy's offset and recoupment provisions violate section 407 of the Social Security Act. Section 407 states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). Plaintiff argues that "the Policy's Social Security benefit transfer provision transfers a disabled insured's Social Security Disability Income Benefit payments from the insured to Liberty. Liberty saves money and pays less than a disabled insured would expect because that disabled individual might receive, or is receiving, Social Security disability income." Dkt. 170-1 at 17.

Liberty contends that numerous courts have held that both an insurance policy's Social Security offset provision, as well as related provisions permitting recoupment of overpayments in light of a retroactive Social Security benefits award, are legal under the Social Security Act. Courts have held that these provisions do not violate Section 407 because the insurance companies are not attempting to recover a recipient's Social Security benefits, but rather are seeking to

---

[3] The parties have raised a number of evidentiary objections in the course of briefing the instant motions. The Court finds it unnecessary to rule on these objections at this time as there is sufficient admissible evidence to present disputes of fact. The parties may renew specific objections in motions in limine or at the time of trial.

10

recover funds that the insurance company already paid under the insurance policy. In *Fortelney v. Liberty Life Assurance Co. of Boston*, 790 F. Supp. 2d 1322, 1343-44 (W.D. Okla. 2011), the court held:

> Initially, the court finds that Liberty was authorized to require the offset of social security benefits paid to a policyholder and any dependents against the amounts payable to the policyholder under the LTD policy. Under the specific terms of the LTD policy, LTD benefits are reduced by "Other Income Benefits," which includes social security benefits that the policyholder "receives or is eligible to receive" and that "his spouse, child or children receives or are eligible to receive because of [the policyholder's] Disability." *See*, Liberty's motion, Ex. 1, LTD–1, LTD–22. Courts have enforced disability benefit plans which include such offset provisions. . . . Moreover, courts have determined that such an offset provision does not violate section 407(a).
>
> The court additionally concludes that Liberty was entitled to seek reimbursement of LTD benefits paid to Fortelney and Carter, without a reduction for social security benefits, when they received their lump-sum retroactive social security benefits. The LTD policy expressly provides that Liberty has a right to recover any "overpayment of benefits" caused by the policyholder's receipt of "Other Income Benefits." *See*, Liberty's motion, Ex. 1, GNP–4. The LTD policy also provides that Liberty may recover an overpayment by "requesting a lump sum payment" of the overpaid amount; reducing "any benefits payable" under the policy; taking any "appropriate collection activity available" or "placing a lien, if not prohibited by law, in the amount of the overpayment." *Id*. It further provides that full reimbursement is to be made to Liberty. *Id*. Plaintiffs additionally signed a reimbursement agreement which provided for the repayment in full of an overpayment. Courts have permitted equitable claims to be filed against claimants, seeking restitution of the overpayments under ERISA, 29 U.S.C. § 1132(a)(3). . . . Courts have found these claims not to violate § 407(a) because the insurance company did not seek to recover the policyholder's social security benefits (although the amount in question was the same as the amount of the claimant's social security benefits), rather, the insurance company was seeking to recover in equity from funds the plan has already paid under the long term disability benefits plan.
>
> In addition, a district court has permitted recoupment of an overpayment by withholding future benefit payments under a long term disability plan, finding that such action did not violate § 407(a). *Stuart v. Metropolitan Life Ins. Company*, 664 F.Supp. 619, 625 (D.Me.1987).10 The court concluded that the recoupment for amounts not reimbursed was not a "transfer" under § 407(a). *Id.* Moreover, another district court decision permitted an insurer to receive a policyholder's retroactive social security benefits to reimburse the insurer for an overpayment when the policyholder chose to pay the benefits instead of having the insurer recover the overpayment by reducing the policyholder's future benefit payments. . . .
>
> In the case at bar, Liberty did not seek reimbursement of the overpayments to Fortelney and Carter by filing an equitable claim for restitution under § 1132(a)(3). The allegations of the Amended Complaint, however, reveal that as to the overpayment of LTD benefits to Carter based upon Chelsea Carter's receipt of retroactive social security benefits, Liberty withheld all LTD benefits owed to Carter to recover the overpayment. The court, agreeing with the district court in *Stuart*, finds that the withholding of future disability benefits until the overpayment

> based upon the social security benefits paid to Chelsea Carter was recouped was permissible and did not violate § 407(a). *Stuart*, 664 F.Supp. at 625. Moreover, such action was in accordance with the LTD policy and the SSRA executed by Carter. *See*, Liberty's motion, Ex. 1, GNP–4; Ex. 2 to Liberty's supplement to motion to dismiss. In so finding, the court rejects plaintiffs' arguments urging the court to disallow any offsetting of social security benefits of a policyholder's dependent against the policyholder's long term disability benefits as unlawful and unfair. . . .

*Id*. (internal citations omitted); *see also Mayhew v. Hartford Life & Accident Ins. Co*., 822 F. Supp. 2d 1028, 1034 (N.D. Cal. 2011) (SSDI dependent benefits are properly offset from disability policies where the contract requires and offset does not violate Section 407); *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d. 215, 231-232 (lst Cir. 2010) ("[W]e find that § 407(a) does not bar Liberty's claim because Liberty is not attempting to recover Cusson's SSDI benefits. Rather, Liberty seeks to recover in equity from funds Liberty itself already paid under the LTD plan. Although the amount in question happens to be the same as the amount of Cusson's retroactive SSDI payment, the funds Liberty is targeting do not come from SSDI, and thus § 407(a) does not prohibit Liberty's claim."); *Godwin v. Sun Life Assurance Co*., 980 F.2d 323, 324 (5th Cir. 1992); *Lamb v. Connecticut General Life Ins. Co*., 643 F.2d 108, 110 (3d Cir. 1981); *Dowell v. Aetna Life Ins. Co*., 468 F.2d 802, 803 (4th Cir. 1972); *Poisson v. Allstate Life Insurance Co*., 640 F. Supp. 147, 149 (D. Me. 1986) ("The Defendant did not assert entitlement to the Plaintiff's Social Security benefits in any way. Rather, the Defendant asserted that its contractual obligation to the Plaintiff is payment of a dollar amount which maintains her income at a contractually agreed upon level, depending on other benefits she receives. The fact that Plaintiff ultimately received Social Security benefits for months past rather than present does not change the nature of the contract. Allstate sought return of an alleged overpayment, not a right to Plaintiff's Social Security benefits as such.").

Plaintiff does not address the numerous cases cited by defendant. Instead, plaintiff relies on *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012). In that case, the Ninth Circuit vacated a district court judgment reimbursing a plan administrator's overpayments of long-term disability benefits to a beneficiary because it did not constitute equitable relief under ERISA § 502(a)(3). The insurance company had initially paid Bilyeu's claim for disability benefits, and the plan required Bilyeu to "reimburse Unum for any

12

overpayment arising from her receipt of disability payments from any other source." *Id*. at 1087. After Bilyeu challenged the termination of her benefits, Unum filed a counterclaim seeking reimbursement of an alleged overpayment. *Id*. at 1087–88. The district court awarded reimbursement, but the Ninth Circuit reversed, holding that the district court had improperly awarded legal relief unavailable under ERISA. The court held that Unum failed to establish the criteria for an equitable lien by agreement under ERISA because the reimbursement agreement did not identify a specific fund, distinct from Bilyeu's general assets, from which reimbursement was sought, and that even if the overpaid benefits qualified as a "particular fund," Unum had not established the funds were within Bilyeu's "possession or control" because "Bilyeu ha[d] spent the overpaid benefits." *Id*. at 1094. The court noted in dicta,

> Unum's reimbursement agreement would have avoided these problems if, consistent with *Sereboff*, it had identified the third party recovery—here, Bilyeu's social security disability benefits—as the particular fund enlisted to serve as security for the overpayment of benefits. Of course, that would not have worked in this case: Under the Social Security Act, Bilyeu could not assign her social security benefits, and Unum could not attach them. *See* 42 U.S.C. § 407(a). "The purpose of the exemption created by Congress in 42 U.S.C. § 407 is to protect social security beneficiaries from creditors' claims." *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985). By identifying the overpaid benefits as the particular fund, rather than the social security benefits, Unum attempts to circumvent the congressional prohibition on assignment and attachment of social security benefits.

*Id*. at 1093-94.

*Bilyeu* does not support plaintiff's claim that the Social Security offset and recoupment provisions violate the Social Security Act. As Liberty notes, *Bilyeu* addressed the specific question of whether an insurance company could seek, as equitable relief under ERISA, reimbursement of overpaid benefits from an individual's general assets. This case is not governed by ERISA, and further Liberty is not seeking to recover from plaintiff's general assets. More importantly, Liberty does not seek to attach plaintiff's Social Security benefits. Instead, Liberty offset plaintiff's benefits because her Social Security benefits constitute "other income" under the Policy, and Liberty recouped the overpayment from plaintiff's insurance benefits. Once Liberty recouped the overpayment, plaintiff resumed receiving her monthly disability payments. The Court agrees with the reasoning of the numerous courts that have held that such provisions do not violate the Social Security Act, and accordingly, the Court GRANTS defendant's motion for

13

summary judgment on this claim.

Plaintiff also contends that these provisions are not enforceable because they are not conspicuous. To be enforceable, "any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.'" *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1204 (quoting *Steven v. Fidelity & Casualty Co.*, 58 Cal.2d 862, 878 (1962)). "Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." *Haynes*, 32 Cal. 4th at 1204. "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." *Id*.

The Court finds that these provisions are conspicuous and therefore enforceable. The Social Security offset provision is covered twice in SECTION I-SCHEDULE OF BENEFITS and three times in SECTION 4- DISABILITY INCOME BENEFITS. Under a bolded heading titled **Amount of Insurance Benefits**, the Policy states that benefits are calculated by subtracting "Benefits from Other Income" from the relevant "Benefit Percentage of Eligible Earnings." The policy repeatedly directs the reader to Section 4 to find the definition of "Benefits from Other Income." The bolded subsections titled **Benefits from Other Income** explain at P00016 and P00018 that Benefits from Other Income include: "1. any Disability and/or Retirement benefits for which the Covered Person is eligible under Social Security . . . . " *See also id*. at P00021-24. These bolded subheadings explain how to obtain benefits, the amount of the benefit to be calculated, circumstances in which the benefits may be limited, and circumstances in which other income may be offset against the Policy benefits, specifically listing Benefits from Other Income and explaining that it includes: "5. The amount of Disability and/or Retirement Benefits under the United States Social Security Act . . . for which: a. The Covered Person is eligible for . . . . " *Id*. at P00024. The Court finds that "the entire policy adequately directs the reader to the terms of the relevant exclusionary language." *Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561, 575 (2013).

14

## II. Declaratory relief -- Discretionary clause

The Policy contains a section titled "Interpretation of the Policy." It states:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this Policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this Policy and benefit eligibility shall be conclusive and binding.

Dkt. No. 185-6, Ex. 1, P00031.

Plaintiff seeks a declaration from this Court that this clause is a "discretionary clause" that is "void and unenforceable in its entirety" under Cal. Ins. Code § 10110.6, and asks "that the Court declare invalid and void each and every of LIBERTY's policy term construction and interpretations and benefit eligibility determinations that LIBERTY has made, utilized, relied on or propagated in relation to any claim since January 1, 2012, including Plaintiffs claim." SAC ¶¶ 178-83.

Section 10110.6 provides,

> (a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.
>
> (b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.
>
> (c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.
>
> (d) Nothing in this section prohibits an insurer from including a provision in a contract that informs an insured that as part of its routine operations the insurer applies the terms of its contracts for making decisions, including making determinations regarding eligibility, receipt of benefits and claims, or explaining policies, procedures, and processes, so long as the provision could not give rise to a deferential standard of review by any reviewing court.
>
> (e) This section applies to both group and individual products.
>
> (f) The commissioner may adopt regulations reasonably necessary to implement the provisions of this section.
>
> (g) This section is self-executing. If a life insurance or disability insurance policy, contract, certificate, or agreement contains a provision rendered void and

> unenforceable by this section, the parties to the policy, contract, certificate, or agreement and the courts shall treat that provision as void and unenforceable.

Cal. Ins. Code § 10110.6.

Defendant argues that § 10110.6's prohibition on discretionary clauses only applies to policies governed by ERISA, and here, it is undisputed that the Policy at issue was issued to the University of California, which is a state entity and therefore is not subject to ERISA. Defendant argues that a discretionary clause only affects the standard of review in claims subject to ERISA. Defendant also argues that "no court has ever held that by invalidating a 'discretionary clause' in an insurance policy, the insurer is no longer invested with the ability to interpret the contract and make benefit eligibility determinations under the policy." Dkt. No. 185 at 19. Defendant also argues that "even if the Court held that §10110.6 did invalidate the Interpretation of the Policy clause, the Policy's Conformity to State Law provisions ensure that the Policy is read to conform with the statutes of the governing jurisdiction and would ensure that any void terms were not incorporated into the Policy. The statute itself is self-executing and no further action would be needed to void the provision beyond application of the statute itself." *Id*. at 19 n. 3.

Plaintiff appears to concede that § 10110.6 was enacted to eliminate the abuse of discretion standard of review that applies in ERISA cases when a policy confers discretion on the insurer to interpret policy terms. *See* Dkt. No. 170 at 9-10. Plaintiff argues, however, that "[t]he use of discretionary clauses, according to [The National Association of Insurance Commissioners], may result in insurers engaging in inappropriate claim practices and relying on the discretionary clause as a shield," *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840 (9th Cir. 2009), and thus the issue is not just relevant to ERISA plans. However, *Morrison* is inapposite because in that case the question was whether a state's practice of disapproving insurance policies with clauses vesting discretion in insurers violated ERISA. (The Ninth Circuit held that the state's practice was not preempted by ERISA.) Plaintiff has not cited any cases addressing the impact of § 10110.6 on a non-ERISA policy, and the Court's research did not locate any. To the contrary, all of the cases examining § 10110.6 have arisen in the ERISA context, and those cases hold that § 10110.6 renders void grants of discretionary authority in insurance contracts and thus that a *de novo* standard of review applies. *See, e.g.*, *Curran v. United of Omaha Life Ins. Co*., 38 F. Supp. 3d

16

1184 (S.D. Cal. 2014); *Gonda v. The Permanente Med. Grp., Inc.*, 10 F. Supp. 3d 1091, 1092 (N.D. Cal. 2014); *Cerone v. Reliance Standard Life Ins. Co*., 9 F. Supp. 3d 1145 (S.D. Cal. 2014).

A district court has discretion to decline jurisdiction over a claim for declaratory relief. 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995). Here, in light of the fact that this case is not governed by ERISA, plaintiff has not shown an actual controversy. Accordingly, the Court DISMISSES plaintiff's claim for declaratory relief to the extent plaintiff seeks relief regarding the discretionary provision.

### III. Plaintiff's motion to compel

In light of the Court's rulings with regard to the Social Security offset and recoupment provisions and the discretionary provision, the Court DENIES plaintiff's motion to compel discovery related to these provisions. The Court also DENIES the balance of plaintiff's motion to compel, finding that plaintiff's motion is untimely and that plaintiff has not demonstrated any good cause for reopening discovery approximately six weeks before trial.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendant's motion for partial summary judgment, DENIES plaintiff's motion for partial summary judgment, and DENIES plaintiff's motion for a determination of the validity of policy provisions and motion to compel.

**IT IS SO ORDERED**.

Dated: July 5, 2016

SUSAN ILLSTON
United States District Judge